UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MYRON GUSHLAK,

                        Petitioner,                              **MEMORANDUM & ORDER**

      -against-                                                 16-CV-2713 (NGG) (JO)

UNITED STATES OF AMERICA,

                        Respondent.
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

      -against-                                               03-CR-833 (NGG)

MYRON L. GUSHLAK,

                        Defendant.
------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Petitioner Myron Gushlak's petition for a writ of coram nobis[1] (the "Petition") under the All Writs Act, 28 U.S.C. § 1651, filed on May 27, 2016. (Mot. to Vacate Restitution Order ("Pet.") (Dkt. 1), No. 16-CV-2713.)[2] Petitioner asks the court to vacate the order of restitution and fine issued in his criminal trial. (Mem. in Supp. of Pet. ("Pet'r's Mem.") (Dkt. 1-2), No. 16-CV-2713, at 17.) The Petition relies on the sole grounds that Petitioner's trial counsel were constitutionally ineffective in their failure to adequately investigate alternative methods for calculating restitution. For the reasons discussed below, the Petition is DENIED.

---

[1] Also sometimes called a "writ of error coram nobis." See Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014) (using both terms).
[2] Unless otherwise stated, all citations to docket entries refer to Petitioner's criminal docket, Case No. 03-CR-833 (NGG).

# I. BACKGROUND

The sections that follow review in relevant part the Petitioner's criminal charges, the court's restitution orders, and the Petitioner's initial petition for a writ of habeas corpus. The court assumes the parties' familiarity with the extensive underlying proceedings and summarizes the record only to the extent necessary for the court's review of the Petition.

## A. The Criminal Charges

On July 22, 2003, Petitioner pleaded guilty to one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956. (See Feb. 23, 2011, Mem. & Order (Dkt. 35), at 1 (discussing Sealed Minute Entry (Dkt. 5)).) As part of his guilty plea, Petitioner admitted that he entered into a conspiracy by which he paid "kickbacks" to certain brokers in exchange for those brokers' agreement to "aggressively push" stock in Global Net, Inc. ("Global Net"), of which Petitioner was the controlling owner. (See Apr. 20, 2012, Mem. & Order (Dkt. 104) at 1.) Neither Petitioner nor the brokers publicly disclosed these kickback payments to potential investors. (Id.) The scheme successfully increased the stock price, allowing Petitioner to sell roughly 1.1 million shares in Global Net at inflated prices between January 1999 and December 2000. (Id. at 1-2.)

## B. The Restitution Submission and Orders

On November 18, 2010, the court sentenced Petitioner to 72 months in prison and a $25 million fine. (J. (Dkt. 47).) Because Petitioner pleaded guilty to an "offense against property," the court was required by the Mandatory Victim Restitution Act (the "MVRA") to order Petitioner to pay restitution to the victims of his fraud (See Apr. 20, 2012, Mem. & Order at 2 & n.2. (citing the MVRA, 18 U.S.C. § 3663A)); however, at the time of sentencing, the court

was unable to determine the proper amount of restitution (see id. at 2). The court ordered the Government to provide evidence of the victims' losses. (See id.) Following a series of submissions and orders, the court found by a preponderance of the evidence that restitution in the amount of $17,492,817.45 constituted a "reasonable estimate" of victim losses attributable to Petitioner's fraud and ordered Petitioner to pay this amount. (Id. at 20.) Petitioner appealed the restitution award to the Second Circuit, which affirmed the court's order in an opinion dated August 29, 2013. See United States v. Gushlak, 728 F.3d 184 (2d Cir. 2013). (See also Mandate of U.S.C.A (Dkt. 116) (dated Nov. 13, 2013).)

### C. Petitioner's Habeas Petition

Petitioner completed the custodial portion of his sentence on November 10, 2015. (Pet. ¶ 8.) In March 2015, while still in custody, Petitioner filed a separate petition to vacate the restitution and fine pursuant to 28 U.S.C. § 2255. (Mot. to Vacate J. (Dkt. 1), No. 15-CV-1260.) That habeas petition asserted the same claim now presented in the instant petition. (Compare Mem. in Supp. of Pet'r's Mot. to Vacate (Dkt. 2), No. 15-CV-1260, with Pet'r's Mem.) However, after a discussion with the U.S. Attorney's Office, Petitioner informed the court that "the proper vehicle to challenge a restitution order and fine may not be a 2255 petition."[3] (Pet'r's Ltr. (Dkt. 8), No. 15-CV-1260.) With the court's permission (Order Granting Mot. to Withdraw Mot. to Vacate (Dkt. 9), No. 15-CV-1260), Petitioner withdrew his motion to vacate under Section 2255 and brought the instant petition shortly thereafter.

## II. THE INSTANT PETITION

The sole basis for Petitioner's application for a writ of coram nobis is that he received constitutionally ineffective assistance of counsel with respect to the court's calculation of

---

[3] Petitioner and respondent were correct in their judgment that a motion to vacate an order of restitution and fine is not properly raised under 28 U.S.C. § 2255. See Kaminski v. United States, 339 F.3d 84 (2d Cir. 2003).

3

restitution.[4] In particular, Petitioner points to his attorneys' failure to interview any of the purported victims of his securities fraud or to subpoena documents pertaining to those victims' relevant trading history. Noting that the court, in accepting the Government's proposed restitution calculation, found that Petitioner "failed to present [] strong countervailing evidence to prevent the Government from meeting its burden of proof," Petitioner claims that victim statements or investment records may have provided the necessary contradictory showing. (Pet'r's Mem. at 8-9.)

## III. DISCUSSION

### A. Writs of Coram Nobis

The writ of coram nobis provides individuals with an "opportunity to challenge invalid convictions after the sentence has already been served, but 'the results of the conviction still persist.'" Dean v. United States, 418 F. Supp. 2d 149, 152 (E.D.N.Y 2006) (citing United States v. Morgan, 346 U.S. 502, 512-13 (1954)); see also Carnesi v. United States, 933 F. Supp. 2d 388, 393 (E.D.N.Y. 2013). "[R]elief under the writ is strictly limited to those cases in which 'errors . . . of the most fundamental character' have rendered 'the proceeding itself irregular and invalid.'" Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996) (alterations in original) (quoting United States v. Carter, 437 F.2d 444, 445 (5th Cir. 1971)). Under the standard set by the Second Circuit,

> [a] petitioner seeking [relief under a writ of coram nobis] must demonstrate that (1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.

---

[4] Petitioner also seeks relief from the fine imposed by the court on the basis that loss calculation is relevant to the calculation of both the restitution and fine amounts. (See Pet'r's Mem. at 17 n.10.) Accordingly, the court's analysis of Petitioner's claims for relief from the restitution order should be regarded as addressing loss calculation as it is relevant to the fine as well.

4

Id. (internal quotation marks, citations, and alterations omitted).

Under the first requirement set forth above, "ineffective assistance of counsel is one ground for granting a writ of coram nobis." Kovacs, 744 F.3d at 49; see also Chhabra v. United States, 720 F.3d 395, 406 (2d Cir. 2013). The Petition thus raises at least a facially acceptable ground for obtaining relief; however, applications predicated on this basis must both satisfy the other requirements for writs of coram nobis as well as the Strickland test for ineffective assistance of counsel, discussed at greater length below. See Kovacs, 744 F.3d at 49.

With respect to whether a coram nobis petitioner has "sound reasons" for any delay in seeking such relief, "[t]he critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay." Id. at 54 (quoting Foont, 93 F.2d at 80). While Petitioner did not file his petition until nearly 3 years after entry of the appellate court's judgment, he filed his initial application for a writ of habeas corpus, predicated on the same grounds as those presented here, less than 18 months after finalization. (See supra Section II.C.) Petitioner's delay appears to be attributable to his attorney's lack of awareness as to the writ's existence or proper use, a ground which the Second Circuit has explicitly found to be justifiable. See Kovacs, 744 F.3d at 54 (holding that a petitioner's unawareness of the writ, "which is as arcane as it is ancient," may serve to excuse some delay where they have otherwise been diligent in seeking relief). Under the circumstances, the court concludes that Petitioner's delay in seeking relief is excusable. See du Purton v. United States, — F.Supp. 3d —, No. 15-CV-1026 (ADS), 2016 WL 7335614, at *3 (E.D.N.Y. Dec. 16, 2016), appeal filed No. 17-151 (2d Cir. Jan. 13, 2017) (noting that coram nobis applications have no statute of limitations, and so "[c]ourt[s] consider[] timeliness on a case-by case basis").

As to the last requirement—that a coram nobis petitioner must "continue[] to suffer legal consequences from his conviction that may be remedied by the granting of the writ"—the Second Circuit has not stated definitively whether restitution orders satisfy this prong. However, several district courts have held that a restitution order constitutes a continuing legal consequence within the meaning of this requirement. See, e.g., Carnesi, 933 F. Supp. 2d at 393-94 (citing Kaminsky, 339 F.3d at 89-90 (separate opinion of Calabresi, J.)); United States v. Bilal, 941 F. Supp. 2d 397, 404 (S.D.N.Y. 2013). The court agrees with the conclusions reached by other district courts in this circuit that a petitioner subject to a restitution order "continues to suffer legal consequences from his conviction" and so may seek relief through a writ of coram nobis.

The sole remaining issue, then, is whether the petitioner can show that his counsel was constitutionally ineffective and so demonstrate the required "compelling circumstances" entitling him to coram nobis relief.

## B. Ineffective Assistance of Counsel

As noted above, a coram nobis petitioner must satisfy the same requirements as petitioners seeking post-conviction relief based on claimed ineffective assistance of counsel. Kovacs, 744 F.3d at 49. The Supreme Court's decision in Strickland v. Washington, 446 U.S. 668 (1984), set the bar for asserting claims of ineffective assistance of counsel. "To establish that counsel's performance was constitutionally defective," the petitioner bears the burden of showing that (1) "the lawyer's performance fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Torres v. Donnelly, 554

F.3d 322, 325 (2d Cir. 2009) (citations and internal quotation marks omitted). The court finds that Petitioner has failed to satisfy either element.

1. Performance of Counsel

Under the first prong of Strickland, "[a] defense counsel's performance is unreasonable when it is so deficient that it falls outside the wide range of professionally competent assistance." Kovacs, 744 F.3d at 50 (internal quotation marks omitted). Under this standard,

> [s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and even strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts make it reasonable to believe that further investigation was unnecessary.

Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (internal citations and quotation marks omitted).

Evaluating the attorneys' performance here requires a brief overview of restitution under the MVRA. Where a defendant is convicted of a qualifying crime, the MVRA requires the court to "order the defendant to pay restitution to any identifiable person <u>directly and proximately harmed</u> by the offense of conviction." United States v. Reifler, 446 F.3d 65, 113 (2d Cir. 2006) (emphasis added). Cases such as Petitioner's present particular difficulty in evaluating victims' losses. The crux of those claims is that: (1) the fraudster defendant artificially inflated the value of the stock; (2) victim investors paid a higher price than dictated by market forces for the stock; and (3) the victims experienced unfair losses when they sold their holdings after the value of the stock declined for fraud-related reasons (e.g. cessation or revelation of the fraud). The complexity in evaluating restitution in those cases stems from the proximate causation requirement: a given security's price may change due to non-fraud factors, and the recoverable loss experienced by an individual victim depends on the change in the value of the shares attributable to the crime during the period that the victim held the security.

In order to respond to these difficulties, courts ordering restitution in securities fraud cases often proceed in two steps. First, the court must determine the portion of any change in a given security's value attributable to the fraud versus extraneous factors. Gushlak, 728 F.3d at 197 (citing United States v. Zolp, 479 F.3d 715, 719 (9th Cir. 2007)). This calculation need not be exact, and "requires only a reasonable approximation of losses supported by a sound methodology." Id. at 196. In Petitioner's own direct appeal, the Second Circuit noted that, due to the sophisticated financial analysis required to determine aggregate investor losses,

> courts [] can and ordinarily do rely on the testimony of one or more experts for one side to establish a statistical model, and one or more on the other side to bring to the court's attention the ways in which that model may be unsound and, if necessary, propose a viable alternative.

Id. at 197. The resulting model does not, however, demonstrate the losses to any particular victim; rather, it shows the amount of the security's value attributable to fraud on a given day. Thus, the second step of the analysis is to plug in the dates on which each investor bought and sold the security, determining whether the value of their holdings during that period was decreased for reasons related to the fraud. See id. This allows the court to determine both individual and aggregate victim losses and so to calculate the proper restitution amount.

In Petitioner's case, the court considered multiple Government submissions purporting to calculate the proper amount of restitution. (See Dec. 20, 2010, Restitution Ltr. (Dkt. 21); Jan. 26, 2011, Restitution Reply Ltr. (Dkt. 29); Apr. 15, 2011, Restitution Ltr. (Dkt. 42); Oct. 24, 2011, Sentencing Mem. (Dkt. 70).) The court rejected three such submissions, finding the methodology or supporting detail to be lacking in such a way that the resulting victim loss figures did not provide a "reasonable estimate" of the total amount of the actual loss. (See Apr. 20, 2012, Mem. and Order at 5-9.) Significantly, in response to one of the Government's submissions, Petitioner's counsel proposed that determination of the aggregate loss amount

should be based on individualized victim loss affidavits rather than a more generalized loss calculation methodology using data derived from trading records. (See Def's Reply to Jan. 26, 2011, Restitution Reply Ltr. (Dkt. 31) at 3-5.) Contemplating the MVRA's direction that restitution should attempt to "fully compensate victims for their losses" and "restore [them] to their original state of well-being," (Feb. 23, 2011, Mem. & Order at 8 (quoting United States v. Boccangna, 450 F.3d 107, 115 (2d Cir. 2006)), the court found that

> where there are a large number of potential victims who have suffered quantifiable pecuniary losses differentiated only in their magnitude, and where the losses sustained by all potential victims are disclosed in the same business records, reliance on incomplete loss affidavits from only some of the potential victims, instead of those business records, would poorly serve the compensatory purpose of the MVRA.

Id. Based on this assessment, the court found that "reliance on [] loss affidavits is inappropriate here." (Id. at 9.) Instead, the court eventually adopted a loss valuation model proposed by a Government expert that relied on statistical analysis and Global Net trading data to determine aggregate losses without reference to individual or subjective loss attestations by victims. (See generally Apr. 20, 2012, Mem. & Order; DeRosa Expert Report (Dkt. 71).)

As noted, the sole basis for Petitioner's ineffective assistance of counsel claim is that his attorneys failed to collect affidavits and records from investors to "verify the bona fides of the government's claims that each had actually suffered a loss as opposed to a profit, and if so the amount lost." (Pet'r's Mem. at 8 (emphasis in original).) Petitioner argues that evidence from individual investors might have shown that the Government's loss valuation model did not accurately reflect individual losses and so might have led the court to reconsider its reliance on that model. (See id. at 7.) This argument disregards the court's previous rejection of individual loss affidavits as a means of evaluating aggregate victim losses, as described above. Given the

9

court's explicit contemplation and rejection of individual affidavits and records in favor of objective data concerning aggregate loss, Petitioner's counsel can hardly be faulted for failing to seek evidence of individual losses, either in the form of affidavits or supporting documentation. Instead, his attorneys appear to have made the reasonable calculation that Petitioner was better served by undermining the Government expert's methodology through presentation of a contrary expert report. (See Apr. 20, 2012, Mem. & Order 17-19 (discussing Petitioner's opposing expert report).) This strategic choice falls well within the discretion accorded to counsel in Strickland review, and so the court finds that Petitioner cannot plausibly claim his attorneys acted unreasonably in failing to collect individual affidavits or documents from the victims of his fraud.

2. Prejudice

Even absent its finding that Petitioner has not sufficiently alleged that his attorneys' actions were objectively unreasonable, the court would conclude that the petitioner cannot show sufficient prejudice to meet the Strickland requirements at this stage. Under Strickland's second requirement—that a petitioner show a "reasonable probability that . . . the result of the proceeding would have been different" but for counsels' error(s)—a petitioner must show that "absent [counsel's] errors, the fact finder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 694-95. This prong is not satisfied by a showing that "the unprofessional performance merely 'had some conceivable effect,'" Henry, 409 F.3d at 63 (quoting Strickland, 466 U.S. at 693), nor does it require a petitioner to show that "a counsel's deficient conduct more likely than not altered the outcome in the case," Strickland, 409 U.S. at 693. However, "'purely speculative' arguments about the impact of an error do not establish

10

prejudice." DeCarlo v. United States, No. 11-CV-2175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (quoting United States v. Weiss, 930 F.3d 185, 199 (2d Cir. 1991)).

While Petitioner asserts at one point that "evidence from the investors . . . would have resulted in a different and reduced amount of loss and resulting fine and restitution," (Pet'r's Mem. at 16), he offers no support for this contention. Rather, Petitioner states that information from the investors was a "potential source" of information, while candidly admitting that he cannot support the prejudice prong because he does not know what information those investors might offer. (Id. at 8, 14-15.) Absent some affirmative indication that victim investors would demonstrate some flaw in the Government's methodology, Petitioner cannot show a "reasonable probability" that their statements would have changed the court's consideration and so fails to show the requisite prejudice.[5] See Rosario v. Bennett, 2002 WL 31852827, at*33 (S.D.N.Y. Dec. 20, 2002) ("[Petitioner] does nothing but assert that an investigation might have revealed witnesses who might have supplied relevant testimony that might have been exculpatory. Such speculation satisfies neither Strickland's deficient performance nor prejudice prongs." (collecting cases)).

---

[5] Petitioner's submission requests that the Government provide the list of victim investors to support his investigation into their losses. (Pet'r's Mem. at 15; Pet'r's Reply (Dkt. 13), No. 16-CV-2713, at 2).) "[D]iscovery is allowed only if the district court, acting in its discretion, finds 'good cause'" based on "'specific allegations'" that give "'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.'" Ferranti v. United States, 480 F. App'x 634, 638 (2d Cir. 2012) (summary order) (alterations omitted) (quoting Bracy v. Gramley, 520 U.S. 899. 904 (1997)); see also United States v. Durrani, 115 F. App'x 500, 502-03 (2d Cir. 2004) (summary order) (citing Flemming v. United States, 146 F.3d 88, 90 n.2 (2d Cir. 1998)) (indicating coram nobis petitioners must demonstrate "good cause" under the same standard applicable to petitions for habeas corpus). For the reasons stated above, the court concludes that Petitioner has not shown good cause sufficient to merit discovery, as the facts, even if fully developed, would not give reason to believe the court would alter its restitution order.

## IV. Conclusion

For the reasons stated above, the Petition (Dkt. 1) is DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
March 3, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge